UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IVAN WHITE,** | : | |
| Plaintiff | : | **CIVIL ACTION NO. 1:16-0675** |
| v. | : | **(MANNION, D.J.)** |
| | | **(CARLSON, M.J.)** |
| **DARRELL WIREMAN, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

Presently before the court is the October 15, 2018 report and recommendation ("First Report"), (Doc. 65), of Magistrate Judge Martin Carlson, which recommends that the defendants', Darrell Wireman, Morris L. Houser, Ulrich Klemm, Shawn Kephart, James Eckard, Angela Duvall, Ron Smith, Ray Dunkle, and the Pennsylvania Department of Corrections ("DOC"), (collectively, "Defendants"), motion for partial summary judgment, (Doc. 43), be granted in part and denied in part. Defendants filed objections to the First Report. (Doc. 72).

Also before the court is the December 19, 2019 report and recommendation ("Second Report"), (Doc. 127), of Judge Carlson, which recommends that Defendants' motion for summary judgment, (Doc. 112), be granted in part and denied in part. The plaintiff, Ivan White ("White"), filed objections to the Second Report. (Doc. 128).

Based on the foregoing, Judge Carlson's First and Second Reports, (Doc. 65; Doc. 127), will be **ADOPTED IN THEIR ENTIRETY**; Defendants' objections to the First Report, (Doc. 72), will be **OVERRULED**; Defendants' motion for partial summary judgment, (Doc. 43), will be **GRANTED IN PART** and **DENIED IN PART**; White's objections to the Second Report, (Doc. 128), will be **OVERRULED**; and Defendants' motion for summary judgment, (Doc. 112), will be **GRANTED IN PART** and **DENIED IN PART.**

I.     BACKGROUND

On April 22, 2016, Ivan White ("White"), an inmate currently incarcerated at State Correctional Institution – Huntingdon ("SCI-Huntingdon"), initiated this civil rights action against Defendants. (Doc. 1). White filed a second amended complaint, (Doc. 27), on June 27, 2017, asserting eleven counts that generally fit into two broad categories: Counts I to V pertain to issues that occurred during meetings with his attorney at SCI-Huntingdon on August 30, 2014, and May 24, 2015, and Counts VI to XI pertain to White's religious practices.[1]

On February 5, 2018, a verbal order was entered reassigning this case to the undersigned. On May 4, 2018, Defendants filed the present motion for

---
[1] Count X was dismissed by order dated March 12, 2018. (Doc. 34).

partial summary judgment. (Doc. 43). Specifically, Defendants seek to dismiss Counts I and II for legal insufficiency issues, as well as Count III because it is dependent upon Count II. Defendants also seek to have Counts I, II, III, VIII, and IX dismissed for failure to properly exhaust available administrative remedies pursuant to the Prison Litigation Reform Act of 1996 ("PLRA"). Finally, Defendants seek to have Counts IV and V dismissed against defendants Eckard and Smith, as they relate to the May 24, 2015 incident, and for all counts to be dismissed against defendants Houser and Dunkle.

In his First Report, Judge Carlson recommends that Counts VIII and IX be dismissed against all Defendants due to White's failure to exhaust his administrative remedies under the PLRA insofar as the grievances that White filed failed to alert Defendants to his issues regarding the Ramadan fast or the alleged promotion of other religions over White's religion, Muhammad's Temple of Islam. Judge Carlson additionally recommends that summary judgment be entered for defendants Eckard and Smith on Counts IV and V as they relate to the May 24, 2015 attorney visit due to White's failure to name these defendants in the pertinent grievances. Judge Carlson recommends that the Defendants' motion be denied in all other respects.

On October 29, 2018, Defendants filed objections to the First Report, (Doc. 72), and a brief in support, (Doc. 73). Defendants specifically object to

the First Report's recommendation against dismissing Counts I, II, and III for failure to exhaust, arguing that White's grievances did not put Defendants on notice of White's complaints about retaliation for his prior testimony or litigation of his own claims. Defendants also object to the portion of the First Report which recommends denial of summary judgment on the merits of Counts I, II, and III because, *inter alia*, the mere fact that White was permitted to testify in other proceedings does not preclude him from bringing an action pursuant to Section 1981.

Here, because Defendants' objections to the First Report pertain to the recommendation that summary judgment be denied as to Counts I, II, and III, and because the court will adopt the Second Report, which recommends the grant of summary judgment for Defendants on those counts, the court need not address Defendants' objections to the First Report. Accordingly, Defendants' objections to the First Report, (Doc. 72), are **OVERRULED** and the First Report is **ADOPTED IN ITS ENTIRETY**.[2]

---

[2] In a novel argument, White asserts, without support, that the First Report is no longer pending because "[r]ecommendations do not keep on 'pending' forever." (Doc. 130, at 3). Obviously, this argument is unfounded as report and recommendations do not cease pending merely because there has been a subsequent report and recommendation on a separate motion. Report and recommendations, like motions, remain pending until a court issues a ruling on it.

After the close of discovery on May 31, 2019, Defendants filed another motion for summary judgment, (Doc. 112), on July 1, 2019, this time seeking summary judgment on all counts not recommended for dismissal in the First Report—namely, Counts I, II, III, IV, V, and XI. White filed a brief in opposition on July 23, 2019, (Doc. 125), and Defendants filed a reply brief on August 6, 2019, (Doc. 126).

On December 19, 2019, Judge Carlson issued the Second Report, recommending that summary judgment be entered for Defendants on Counts I, II, III, IV, and V; that Count XI be dismissed as partially moot; and that summary judgment be denied as to Counts VI and VII. (Doc. 127). Additionally, the Second Report repeated the First Report's recommendation that summary judgment be entered for Defendants on Counts VIII and IX. White filed objections to the Second Report, (Doc. 128), and a brief in support, (Doc. 129). Defendants filed a brief in support of the Second Report, (Doc. 129), and White filed a reply brief, (Doc. 130).

## II. STANDARD

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*,

the extent of review is committed to the sound discretion of the district judge and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. *Rieder v. Apfel*, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing *U.S. v. Raddatz*, 447 U.S. 667, 676 (1980)).

Even where no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed.R.Civ.P. 72(b) advisory committee notes; *see also Univac Dental Co. v. Dentsply Intern., Inc.*, 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); M.D.Pa. Local Rule 72.31.

### III. DISCUSSION

Initially, the court notes that, upon review, the uncontested portions of the First and Second Reports contain no plain error or manifest injustice, and therefore those parts are adopted in full. With regard to the contested portions of the Second Report, White makes four specific objections, each of which the court will address in turn.

### a. White's Objection to the Second Report's Recommendation on Count XI

First, White objects to the Second Report's recommendation that Count XI be partially dismissed as moot because to do so "would risk confusion down the line." (Doc. 128, at 2). In Count XI, White brings a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§2000cc *et seq.*, alleging the DOC placed a substantial burden on his religious practices by prohibiting him from observing the December fast in 2014 and 2015, including on his ability to observe an end-of-fast communal feast, and by serving him unlabeled food prohibited by his religion. White seeks injunctive relief in the form of the ability to observe the December fast and to receive a halal diet.

The Second Report observes that Count XI is now partially moot, except with regard to the end-of-fast communal feast, since the DOC has amended its policies in order to accommodate the December fast and the halal diet, and since White acknowledged having been able to observe the December fast in 2016, 2017, and 2018, as well as having been able to receive a halal diet since 2018. *See* Doc. 121, at 12-13.

In his objection, White acknowledges that his demand for injunctive relief as to Count XI is partially moot. Nevertheless, White argues that Count XI should not be partially dismissed but, instead, "[w]ith more precision, the

- 7 -

Court could 'dismiss' claims for injunctive relief as to just those components of White's religious observance that DOC recently ceased to substantially burden." (Doc. 128, at 3). White then cites to the fact that he may still request an award of attorneys' fees and costs under 42 U.S.C. §1988(b) and argues that Count XI should not be dismissed before he has the opportunity "to litigate to obtain the relief available under Section 1988 for RLUIPA claims." (Doc. 128, at 4).

The court will overrule this objection. As the Defendants note, the Second Report does not recommend outright dismissal of Count XI. Instead, it recommends that it be partially dismissed as moot "as it relates to the December fast and halal diet" but that summary judgment be denied "with respect to the end-of-fast communal feast." (Doc. 127, at 45). Thus, it appears that the Second Report recommends precisely as White suggests. Accordingly, White's objection to this portion of the Second Report is **OVERRULED**.

    b. <u>White's Objection to the Second Report's Recommendation on Counts VIII and IX</u>

Next, White objects to the portion of the Second Report which recommends that summary judgment be entered for the Defendants on

Counts VIII and IX (related to establishment of religion)³ because the Defendants' second motion for summary judgment, (Doc. 112), did not seek summary judgment on those counts. White then goes on to challenge Judge Carlson's reasoning in the First Report with regard to the recommendation that Counts VIII and IX be dismissed for failure to exhaust under the PLRA.

Defendants note that the Second Report did not address the merits of Counts VIII and IX because those counts were addressed in the First Report, to which White made no objection. Thus, according to Defendants, White is now attempting to make arguments that should have been raised through objections to the First Report.

Indeed, the Second Report merely reiterates the First Report's recommendation that Counts VIII and IX be dismissed for failure to exhaust but, understandably, does not unnecessarily repeat the prior analysis. In any event, the court agrees with both the First Report and the Second Report's recommendation that summary judgment be granted on these counts because none of White's grievances put prison officials on notice of his objections to Defendants' alleged promotion of the Ramadan fast or other religions over his. Instead, the grievances White filed that were related to

---

³ Counts VIII and IX allege establishment of religion claims, asserting that Defendants "fostered the observance of the Ramadan Fast and urged prisoners to follow that observance instead of the December Fast." (Doc. 27, at 46).

these counts, Grievance Nos. 494714 and 524683, pertained only to the grievance system in general and the failure to process his request. (Doc. 46-6, at 2; Doc. 46-7, at 2). None of White's grievances alleged that Defendants promoted any other religion over White's religion. Therefore, having reviewed the First and Second Reports, the court agrees with their recommendations and Defendants' motion for partial summary judgment, (Doc. 43), is **GRANTED** with respect to Counts VIII and IX. White's second objection is **OVERRULED**.[4]

c. <u>White's Objection to the Second Report's Recommendation on Counts IV and V</u>

Next, White objects to the portion of the Second Report that recommends summary judgment be granted on Counts IV and V, which allege interference and conspiracy to interfere with confidential attorney

---

[4] The court expressly rejects White's argument that Defendants were on notice of his establishment claims because defendant Houser's response to White's grievance referred to pending state litigation—presumably, *Cooper v. Department of Corrections*, No. 691 C.D. 2016, 2016 WL 6246945 (Pa.Commw.Ct. Oct. 26, 2016). The mere fact that a response to a grievance refers to case law does not mean that the grievant raised—and therefore prison officials are considered to be on notice of—all legal issues addressed in the cited case regardless of whether or not the grievant actually attempted to raise them. Such an interpretation would be absurd and is particularly so here where the response does not name the case, but states only that White's request was the same as a prior request he made that was denied because of "litigation pending in the Court of Common Pleas." (Doc. 46-7, at 5).

communications in violation of the Free Speech Clause. White argues that there are outstanding issues of material fact related to these claims. Specifically, he asserts that the evidence of record, as well as some exhibits entered in another case of which he asks the court to take judicial notice, create genuine issues of material fact about whether Defendants infringed on his free speech rights. White also objects to the Second Report's observation that courts in this District have "repeatedly rebuffed efforts to challenge the visiting room practices at SCI Huntingdon on constitutional grounds." (Doc. 127, at 25) (citing *Camacho v. Dean*, No. 1:14-cv-1428, 2016 WL 1182265 (M.D.Pa. Mar. 28, 2016) (adopting a report and recommendation)),[5] and *Lane v. Taveres*, No. 3:14-cv-991, 2015 WL 435003 (M.D.Pa. Feb 3, 2015) (same)).

In *Camacho*, Judge Kane adopted a report and recommendation that recommended denial of the plaintiff's motion for a preliminary injunction seeking confidential contact visits with his attorney. There, the plaintiff argued that SCI-Huntingdon defendants infringed upon his right of access to

---

[5] Notably, White testified in a hearing on the motion for a preliminary injunction in *Camacho*. The *Camacho* report and recommendation summarized this testimony, noting White testified about grievances he filed regarding the same visits with counsel that are at issue in the present matter. *Camacho v. Dean*, No. 1:14-cv-1428, 2015 U.S.Dist.LEXIS 177233, at *25-26 (M.D.Pa. July 22, 2015).

- 11 -

the court by failing to permit confidential contact visits with his counsel due to the visitation procedures at SCI-Huntingdon.

In *Lane*, the plaintiff, likewise in a motion for a preliminary injunction, made a nearly identical claim to that of the plaintiff in *Camacho*. In denying the motion, Judge Caputo found that the plaintiff, Lane, failed to satisfy his burden of demonstrating a reasonable probability of prevailing on the merits of his access-to-courts claim. *Lane*, 2015 WL 435003, at *13. Subsequently, Judge Caputo adopted a report and recommendation and entered summary judgment in favor of the defendants on Lane's access-to-courts claim wherein he made virtually identical allegations to those of White here. More particularly, Lane alleged First Amendment retaliation and that he was denied access to courts because he was unable to fully prepare to testify in a separate proceeding because of the condition of the same visiting booths at issue in this case; because the defendants planted contraband (a cigarette butt) near where Lane met with his counsel; and because a correctional officer brushed up against his counsel's person. *Lane v. Tavares*, No. 3:14-cv-991, 2019 WL 1620285, at *6 (M.D.Pa. Apr. 16, 2019).

The Second Report observes that, while inmates have a constitutional right to meet confidentially with their attorneys, courts have held that there is no constitutional violation when an inmate is provided an area to speak confidentially with counsel, such as non-contact attorney booths. (Doc. 127,

at 25). It was in that respect that Judge Carlson observed that the courts in *Camacho* and *Lane* found that the non-contact attorney booths at SCI-Huntingdon were sufficient to afford an inmate the right to confidentially meet with counsel. Judge Carlson also noted that many of White's present claims are the same as those rejected in *Camacho* and *Lane*.

White asserts that, in doing so, the Second Report, "imports contrasting facts from two other prisoner actions in this district," and was improper for various reasons, including that (1) the standard for a preliminary objection is different than that of summary judgment; (2) because a court may not weigh evidence or assess credibility on a motion for summary judgment; (3) because those cases did not have a free speech claim at the relevant time; (4) because the evidence here is more extensive than in those cases; and (5) because the Second Report, "solely on the basis of findings in *Camacho* and in *Lane*[,] suggest[s] that constitutionally[-]adequate facilities *would have been* available at SCI Huntingdon by May 2015, [and] assumes that the existing facilities *actually were* made available to Mr. White and his counsel, contrary to testimony in the record here." (Doc. 128, at 10).

The court will overrule White's third objection. The Second Report's observation of the similarities between the cases does not equate to error. Additionally, the Second Report's discussion of the virtually identical allegations in those cases does not constitute "confusion" about the pertinent

- 13 -

standard. To the contrary, the Second Report observes that there is not a genuine dispute as to material facts and, in applying the law to the facts, it is apparent that Defendants' actions did not violate White's right to confidentially meet with counsel. The fact that those cases did not have a free speech claim pending at the "relevant" time is immaterial where those courts were addressing the very same non-contact booths that White complains of here.

Finally, White is incorrect that the Second Report's recommendation that summary judgment be entered on these counts is based on the facts involved in *Camacho* and *Lane*. The Second Report specifically notes the following facts in the case at bar:

> White contends that during the August 2014 conference, he was unable to use the intercom system during his conferences because of the static and crackling noises and argues that he and counsel had to shout to each other in order to communicate. Further, during the May 2015 conference, White asserts that he and his counsel were purposely placed in booth number 3 so that Officer Duvall would be able to potentially overhear their conversations. He also argues that he was unable to receive legal advice from counsel at this visit as it pertained to his upcoming testimony in court because he could not view legal papers that his attorney had brought for him. In addition to these concerns, White also alleges misconduct by Officer Duvall during these conferences. With respect to the August 2014 conference, White claims that Duvall struck the window of the attorney booth with her radio several times in order to frighten White and his counsel. It is

> also alleged that Duvall "brushed by the attorney in a menacing fashion" with the intent to intimidate White's counsel. Finally, White claims that Duvall planted a contraband cigarette butt in the attorney booth before the August 2014 visit.

(Doc. 127, at 28).

The court agrees with the Second Report's conclusion that the above-mentioned facts are insufficient to withstand the present motion for summary judgment. Put simply, the facts that White has set forth regarding his attorney visits are insufficient as a matter of law to constitute a violation of his constitutional rights. White has cited no evidence that anyone heard or attempted to overhear his conversations with his attorney. White merely asserts that he recalled hearing noise from people outside the booth, (Doc. 121, at 37, 40), which did not render their conversation non-confidential as a matter of law. *See Camacho*, 2015 U.S. Dist. LEXIS 177233, at *67 ("[W]e conclude that [an inmate] can meet confidentially with his counsel in the attorney booths [at SCI-Huntingdon]."); *Lane,* 2015 WL 435003, at *12 ("In those booths [at SCI-Huntingdon], [an inmate] and his counsel are able to speak confidentially through telephones."). As Defendants note, merely hearing voices outside the booth does not mean that those speaking overheard White and his counsel. "Quite the opposite. If those people were talking, then they were not listening." (Doc. 126, at 3).

- 15 -

Thus, as in *Lane*, "[w]hat remains are unsupported, speculative allegations that Defendants planted contraband (a cigarette butt) near where [White] visited his counsel and that Defendant Duvall 'outright physical[ly] assault[ed]' [White]'s counsel (in reality, brushed up against her [according to counsel's own description of the encounter])." 2019 WL 1620285, at *5. These events, including Officer Duvall's striking the window with a radio, likewise are insufficient as a matter of law to constitute a violation of White's free speech rights.

To the extent White argues his claim is broader than the Second Report recognizes since it also includes the intimidation of his counsel, White is incorrect. As the Judge Carlson succinctly recognizes, "[T]he allegations concerning Officer Duvall's conduct, which allegedly included hitting the window with her radio, planting a contraband cigarette butt in the visiting booth, and brushing up against White's counsel, are not constitutional infractions and do not render White's visits with his attorney non-confidential." (Doc. 127, at 29). *See Lane v. Tavares*, 2019 WL 1620285, at *6. Accordingly, White's third objection to the Second Report is **OVERRULED**, and Defendants' motion for summary judgment, (Doc. 112), is **GRANTED** as to Counts IV and V.

### d. White's Objection to the Second Report's Recommendation on Counts II and III

Lastly, White objects to the Second Report's recommendation that summary judgment be entered for Defendants on Counts II and III. In Counts II and III, White alleges that defendants Duvall, Dunkle, Smith, and Eckard conspired to deter, and neglected to prevent deterrence of, his testimony in federal court. The Second Report recommends summary judgment be entered on these counts because, based on the evidence, White cannot show that he was unable to testify fully and freely in the *Camacho* hearing.

In his objection, White contends that the Second Report's recommendation is based on improper speculation where it observes that any impediment to his testimony in the *Camacho* hearing purportedly caused by the difficulties in meeting with his counsel could have been resolved by simply asking the court to permit him time to review the exhibits. In response, White cites several extra-record facts about the *Camacho* hearing, including that "the parties were surprised that exhibits displayed in the courtroom could not be seen by witnesses who participated by video," that "[q]uite some time was expended in a futile effort to make the link work," and that "[t]he proceedings went forward because the court wanted to avoid any further delay." (Doc. 128, at 12). Curiously, White himself then goes on to speculate that, had he not been "prevented from reviewing the exhibits beforehand with

counsel, his testimony at the *Camacho* hearing could have led to a different result there." (Doc. 128, at 13).

White's objection is unconvincing. While he is correct that preventing him from testifying as fully as he intended and from being able to identify exhibits would be cognizable injuries under Section 1985, as the Second Report aptly observes, White has put forth no evidence in support of this claim other than bald assertions insufficient to survive a motion for summary judgment. Indeed, White himself acknowledged that, other than not having the chance to go over some of the paperwork discussed in his testimony, he did not know in what way he was prevented from testifying as fully as he desired. (Doc. 121, at 44). Crucially, White does not link the alleged interference with his attorney visits to his inability to testify as fully as he would have liked about the exhibits. That is, White has not alleged that the interference with his attorney visits were the reason he did not have a chance to go over the exhibits prior to the hearing.

In fact, White's own testimony contradicts his contention that he was unable to review documents with his attorney during their meetings, since White testified that the attorney visitation booth had "a little slot in the barrier where [if] [counsel] wanted to share a document with you, she could send it to you and you could send it back to her." (Doc. 121-1, at 12). Moreover, White testified that defendants Dunkle, Eckerd, Smith, and Duvall did not tell

him not to testify in the *Camacho* hearing, and did not give him a hard time or punish him in any way for having done so. (Doc. 121, at 47-48). Accordingly, White fourth objection is **OVERRULED**, and Defendants' motion for summary judgment, (Doc. 112), **GRANTED** with respect to Counts II and III.

IV.     **CONCLUSION**

In conclusion, for the reasons set forth above, Defendants' objections to the First Report, (Doc. 72), are **OVERRULED,** and White's objections to the Second Report, (Doc. 128), are **OVERRULED**. The court will **ADOPT IN THEIR ENTIRETY** the First Report, (Doc. 65), and the Second Report, (Doc. 127).

Defendants' motion for partial summary judgment, (Doc. 43), is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** in favor of Defendants on Counts VIII and IX, as well as in favor of defendants Eckard and Smith on Counts IV and V as it relates to the May 24, 2015 attorney visit. Defendants motion for partial summary judgment, (Doc. 43), is **DENIED** in all other respects.

Defendants' motion for summary judgment, (Doc. 112), is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **GRANTED** in favor of Defendants on Counts I, II, III, IV, and V. Summary judgment is **DENIED**

as to Counts VI and VII. Finally, Count XI is **DISMISSED AS MOOT** only insofar as it relates to the December fast and halal diet only. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: February 21, 2020**
16-0675-01